**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SONYA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 15258 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| DOLTON LIBRARY and KATRINA HAWKINS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Sonya Williams brings this suit against the Dolton Public Library (the "Library") and Katrina Hankins, a Library employee, alleging constitutional violations under 42 U.S.C. § 1983 and state law tort claims related to a series of incidents with Hankins beginning in late 2023. The Library moved to dismiss the federal claims under Federal Rule of Civil Procedure 12(b)(6) and the state law claims as untimely. Hankins moved to dismiss all claims under a theory of *res judicata*, additionally arguing that Williams failed to state a claim and the state law claims are time barred. Because Williams failed to allege a constitutional violation, and because Williams failed to allege any policy, custom, or practice with specificity, this Court grants Defendants' motions to dismiss her federal claims without prejudice. This Court further grants Defendants' motions to dismiss with prejudice as to the state law claims of assault, battery, and respondeat superior as untimely. Finally, this Court finds that Williams failed to state a claim for intentional infliction of emotional distress ("IIED") and dismisses that claim without prejudice.

## BACKGROUND[1]

Williams is an elected member of the Dolton Library Board of Trustees. The Library hosted a Christmas party on December 17, 2023 and both Williams and Hankins attended. During the party, Hankins physically attacked Williams, "causing intense physical injuries." Doc. 1 ¶ 8. According to Williams, Hankins attacked her because of her perceived affiliation with the Dolton Mayor at the time, who was under scrutiny for alleged misuse of Village funds, and because Williams had campaigned for more racial diversity in Library staffing.

The attack at the Christmas party sparked an intimidation campaign that included physical attacks, verbal abuse, and exclusion from Library access and business. Following the December incident, the Library sent Williams a letter "ordering her to stay away from the Library."[2] *Id.* ¶ 14. On January 16, 2024, Hankins screamed and swore at Williams at the Library, resulting in a police call. On February 24, 2024, Hankins physically attacked Williams on Library premises, injuring her shoulder. Williams alleges that these incidents were part of a "formal policy to batter, obstruct, harass and intimate" her from exercising her First Amendment rights, including diversity in staffing. *Id.* ¶ 17. She further alleges that the "policy arises from Dolton Library's years' long refusal to train or supervise or discipline Hankins," whom the Library has since promoted. *Id.* ¶ 18.

---

[1] The Court takes the facts in the background section from Williams' complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court "may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

[2] Williams later alleges that she is excluded "from access or use of the Library facility during Hankins' hours of employment." Doc. 1 ¶ 15(c).

On December 21, 2023, Williams sued Hankins pro se in the Circuit Court of Cook County, seeking $10,000 in damages related to the December 17, 2023, incident at the Library Christmas party. Doc. 30 at 19, *Williams v. Dolton Public Library and Katrina Hankins*, No. 2023 601 2589. Williams alleged that Hankins approached her after Williams prepared a to-go-plate, yelling at Williams before grabbing Williams' phone out of her hand and injuring her finger. *Id.* Williams moved to add the Library as a defendant on January 17, 2024. Doc. 30 at 27. Williams voluntarily dismissed her state court case on September 19, 2024. Doc. 30 at 43.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Federal Claims

#### A. Res Judicata

Hankins argues for dismissal of the federal claims under the doctrine of *res judicata*. Although an affirmative defense, the Court may consider whether to dismiss a claim based on *res judicata* under Rule 12(b)(6) where it is "clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parungao*, 858 F.3d at 457. The Court applies Illinois law on *res judicata* because the Illinois state court rendered the order to which Hankins seeks to give preclusive effect. *See Chi. Title Land Tr. Co. v. Potash Corp. of Sask. Sales Ltd.,* 664 F.3d 1075, 1079 (7th Cir. 2011). *Res judicata* applies if (1) the identity of the parties or their privies is the same in this suit as in the state proceeding, (2) the causes of action in this and the state proceeding are the same, and (3) there was a final judgment in the state proceeding. *Id.* As to the cause of action, "[t]he bar extends not only to what was actually decided in the prior action, but also to those matters that could have been decided." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 21. "The party invoking *res judicata* carries the burden of establishing its applicability." *Id.* ¶ 22. The parties here dispute only whether the state court dismissal was a final judgment on the merits.

Hankins argues that Williams' voluntary dismissal of her state court claim became a final judgment on the merits when her time to refile the action under 735 Ill. Comp. Stat. 5/13-217 expired. "The Illinois Supreme Court has deemed § 5/13-217 a 'savings statute, with the purpose of facilitating the disposition of litigation on the merits.'" *Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963, 970 (7th Cir. 2013) (quoting *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489 (1998)). Section 13-217 provides that a plaintiff who voluntarily

dismisses a lawsuit "may commence a new action within one year or within the remaining period of limitation, whichever is greater." 735 Ill. Comp. Stat. 5/13-217. Hankins points to several cases holding that a dismissal for *want of prosecution* becomes final when the time to refile under § 13-217 expires. *See, e.g.*, *Yassan*, 708 F.3d at 970 ("Only once the § 5/13-217 limitation period has expired do Illinois courts recognize a case dismissed for want of prosecution as effectively terminated and a final judgment." (citation omitted) (internal quotations marks omitted)); *S.C. Vaughan Oil Co*, 181 Ill. 2d at 502 ("[A]t the time the refiling period expires, the [dismissal for want of prosecution] constitutes a final judgment because, at this juncture, the order effectively ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." (citation omitted) (internal quotations marks omitted)); *LaSalle Nat'l Tr., N.A. v. Lamel*, 328 Ill. App. 3d 729, 733 (2002) ("Once a plaintiff's opportunity to refile under section 13–217 has expired, the dismissal for want of prosecution concludes the litigation between the parties and becomes a final and appealable order.").

Without authority extending the above rulings to voluntary dismissals, this Court is not persuaded that a plaintiff's failure to re-file within the statutory period converts a *voluntary dismissal* into a final judgment on the merits. "Under Illinois law, voluntary dismissals should not be treated as final judgments on the merits where there are no claim-splitting concerns." *Strickland v. City of Markham*, 178 F.4th 347 (7th Cir. 2026) (citing *Richter*, 2016 IL 119518). Here, Williams argues that she dismissed her state court case in its entirety "to pursue a broader complaint incorporating allegations of violations of federal civil law." Doc. 37 at 1. Hankins has neither articulated any claim-splitting concerns nor cited any cases where an Illinois court gave preclusive effect to a voluntary dismissal in these circumstances. This Court declines to do so here.

### B. Section 1983 Claim against Hankins (Count I)

Williams first brings a First Amendment retaliation claim against Hankins.[3] In support, she alleges that Hankins physically attacked and assaulted her, "impermissibly chilled [her] First Amendment right to advocate for diversity in hiring at the Library under color of law," and that Hankins targeted her "because of Hankins and others' misperceived connection between Trustee Williams and then-Mayor Henyard." Doc. 1 ¶ 30.

Hankins argues that, because Williams was a public employee, she has not adequately alleged that her speech was constitutionally protected so as to allow her to bring a First Amendment retaliation claim. To prove that her speech is protected under the First Amendment, a public employee must establish: (1) that she spoke as a private citizen, (2) about a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as private citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Hankins argues that Williams spoke in her role as a public employee and not a private citizen. Even if Williams spoke as a private citizen, Hankins argues that her speech amounted to internal advocacy related to personal interests and did not address a matter of public concern.

Williams wholly fails to respond to Hankins' arguments concerning whether she advocated for diversity in hiring in her capacity as a public employee or whether her speech addressed a matter of public concern, effectively conceding the points. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (a party waives an argument "where a litigant

---

[3] Williams brings Count I of the complaint against Hankins under 42 U.S.C. § 1983 for alleged violations of her First Amendment rights. Count IX alleges related violations against the Library under *Monell*. To the extent Williams intends to bring Count I against the Library, the Court dismisses it as duplicative of Count IX.

effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action."). This Court thus dismisses Williams' § 1983 claim against Hankins without prejudice.

### C. *Monell* Claim against the Library (Count IX)

To state a *Monell* claim, Williams must allege: "(1) she was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, i.e., deliberate indifference'; and (4) 'the municipal action was the moving force behind the federal-rights violation.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021)). Because Williams has failed to allege a deprivation of a constitutional right, this claim fails.

Even if Williams had alleged a constitutional violation, her complaint further fails to tie the violation to municipal action. *Monell* held that § 1983 claims against a municipality cannot be based on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Williams may instead base *Monell* liability on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation."

*Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted).

Williams alleges that after the initial December 17 incident, "it became the *de facto* policy of Dolton Library to allow Hankins to batter, assault, obstruct, harass and intimidate [her] to punish her for her perceived affiliation with ex-Mayor Henyard and to chill and silence her from exercising her First Amendment rights to advocate for more diversity among Library staff." Doc. 1 ¶ 65. She further alleges that the Library's failure to adequately train Hankins contributed to this policy. *Id.* ¶ 66. These allegations fall short of suggesting a widespread Library policy or practice that could make the Library liable under *Monell*. *See Harris v. Wexford Health Sources, Inc.*, No. 15-cv-10936, 2017 WL 4467480, at *3–4 (N.D. Ill. Oct. 6, 2017) (dismissing *Monell* claim where complaint did not adequately provide facts to support how plaintiff's injuries were caused by defendant's alleged policies or practices). Indeed, Williams' allegations suggest individualized misconduct rather than a widespread practice sufficient to state a *Monell* violation. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[W]hat is needed is evidence that there is a true municipal policy at issue, not a random event.").[4]

Because Williams has neither alleged an underlying constitutional violation nor a widespread Library policy or practice, the Court dismisses this claim without prejudice.

---

[4] In opposition to the Library's motion to dismiss, Williams states that the Library acted "through Hankins and others," that she was afraid of potential violation from Hankins "or other-co-workers," and that she "has been frozen out by other Bo[a]rd members from participating in Library business." Doc. 36 at 2, 4. These allegations, which do not appear in Williams' complaint, are in any event too vague to support her claim.

## II. State Law Claims[5]

### A. Assault, Battery, and Respondeat Superior (Counts III–VIII)

The statute of limitations is an affirmative defense that Williams need not anticipate in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). The Illinois Tort Immunity Act specifies a one-year statute of limitations for state law tort claims against a local public entity or its employees. 745 Ill. Comp. Stat. 10/8-101. Williams alleges that the incidents underlying her assault, battery, and respondeat superior claims[6] occurred on December 17, 2023, January 16, 2024, and February 24, 2024. Doc. 1 ¶¶ 39, 43, 47, 51, 55. The complaint thus plainly reveals that the one-year statute of limitations bars these claims. Williams argues, however, that the doctrines of either equitable tolling or estoppel apply to allow her to proceed on these claims.

"When reviewing a Rule 12(b)(6) dismissal of state law claims based on a statute of limitations, we apply state law regarding the statute of limitations and 'any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel.'" *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (citing *Parish v. City of*

---

[5] Because the parties have fully briefed the state law claims, and because Williams has the opportunity to replead a valid federal claim, this Court addresses these arguments here in the interest of judicial economy. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (district courts should consider, at every stage of the litigation, whether supplemental jurisdiction serves "the values of judicial economy, convenience, fairness, and comity").

[6] Williams' respondeat superior claim is limited to her claims against Hankins for assault and battery.

*Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010)).[7] Under Illinois law, equitable tolling applies in situations where "the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way." *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000); *Ralda-Sanden v. Sanden*, 2013 IL App (1st) 121117, ¶ 19. As to equitable estoppel, "the Supreme Court of Illinois has indicated that equitable estoppel is available only when the defendant has used misrepresentations or concealment—rather than threats of reprisal—to prevent the plaintiff from suing." *Hollander v. Brown*, 457 F.3d 688, 694–95 (7th Cir. 2006) (finding insufficient under Illinois law "claims that a threat of violence, rather than a misrepresentation, prevented her from filing suit"); *see also Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000).

Neither doctrine applies here. In opposition, Williams argues that "[b]ecause defendants continued their intimidation campaign against [her], she was reticent to re-file, fearing escalation." Doc. 36 at 3; Doc. 37 at 4. This cannot support the application of either doctrine. As to tolling, Williams has included no allegations that defendants "misled her or otherwise attempted to prevent her from asserting her rights in a timely manner." *Clay*, 189 Ill. 2d at 614. Williams has not alleged that defendants somehow prevented her from discovering information about her claims or filing within the statute of limitations. Indeed, she timely filed and subsequently voluntarily dismissed claims related to these same incidents in Illinois state court. Regarding estoppel, Williams' claim that she did not re-file because of fears of escalation is insufficient under Illinois law, which requires her to plead that Defendants "used misrepresentations or concealment—rather than threats of reprisal—to prevent [her] from suing."

[7] Although the parties cite federal law on equitable estoppel, this Court applies Illinois law to Williams' claims for both equitable tolling and equitable estoppel.

*Hollander*, 457 F.3d at 694; *Parks*, 193 Ill. 2d at 180 ("Without the misrepresentation or concealment of a material fact, equitable estoppel does not apply.").

Because the statute of limitations bars Williams' state law claims for assault, battery, and respondeat superior, this Court dismisses them with prejudice.

**B. IIED (Count II)**

Williams claims that Hankins' attacks and the Library's "support and encouragement of them" constitute IIED. Doc. 1 ¶ 33. Defendants first both argue that Williams' IIED claim is barred by the one-year statute of limitations under 745 Ill. Comp. Stat. 10/8-101. Under Illinois law, an IIED claim may constitute a "continuing tort," meaning that the claim "accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 285 (2003). Williams broadly alleges an "intimidation campaign" beginning on December 17, 2023, "and continuing through December 16, 2025," although the last date in the complaint of any specific action by either Defendant is February 24, 2024. Doc. 1 ¶ 15. Because the statute of limitations is an affirmative defense, however, this Court declines to dismiss Williams' IIED claim on statute of limitations grounds at this stage. *See Lewis*, 411 F.3d at 842.

Turning then to the sufficiency of her allegations, Williams must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ.*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 935 (2004)). For conduct to rise to the level of extreme and outrageous, it "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized

community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not suffice. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). "Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 745 (2000). Courts examine the "degree of power" the defendant held over the plaintiff; "whether the defendant knew the plaintiff was particularly susceptible to emotional distress and acted inappropriately despite that knowledge"; and "whether the defendant reasonably believed that his objective was legitimate." *Cairel v. Alderden*, 821 F.3d 823, 835–36 (7th Cir. 2016) (citation omitted) (describing Illinois law). "Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, 'if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (citing *Graham*, 318 Ill. App. 3d 736).

Williams appears to base her IIED claim on "an intimidation campaign" that included "physical attacks," "[v]erbal abuse and hostility," "[e]xclusion from access or use of the Library facility during Hankins' hours of employment," and "[f]reezing Williams out from Trustee business." Doc. 1 ¶ 15. The physical attacks and verbal hostility appear to relate to the three incidents described above. Hankins asserts that Williams' complaint merely recites the elements of IIED and thus, the Court should dismiss it. Hankins argues that Williams' "sole support . . . for her IIED claim are her conclusory assertions that Hankins 'physically attacked' her on

December 17, 2023, and February 24, 2024, and 'berated' her on January 16, 2024," events for which Williams provided few facts. Doc. 30 at 15. Hankins further argues that Williams failed to plead the second and third elements of an IIED claim beyond stating that the behavior caused her emotional distress. Williams does not attempt to defend her IIED claim against Hankins' arguments regarding its insufficiency. *See Alioto*, 651 F.3d at 721 (a party waives an argument "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"). This Court thus dismisses Williams' IIED claim without prejudice.[8]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss [26, 30]. The Court dismisses Williams' claims for assault, battery, and respondeat superior (Counts III–VIII) with prejudice and dismisses Williams' § 1983 claims and claims for IIED (Counts I–II, IX) without prejudice.

Dated: November 10, 2026

SARA L. ELLIS
United States District Judge

---

[8] Although the Library moved to dismiss the IIED claim only on statute of limitations grounds, Hankins additionally moved for failure to state a claim. Because Williams based her claim against both Defendants on the same set of facts and because Williams had the opportunity to respond to this argument, this Court dismisses the claim as to both Defendants. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may sua sponte enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion).